UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

| | |
|---|---|
| JONATHAN HOWLAND, ) | |
| ) | |
| Plaintiff, ) | |
| ) | NO. 2:18-CV-0119 |
| vs. ) | |
| ) | |
| NANCY A. BERRYHILL, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**REPORT AND RECOMMENDATION**

This matter is before the United States Magistrate Judge under the standing orders of the Court and 28 U.S.C. § 636 for a report and recommendation. Plaintiff's Disability Insurance Benefits ("DIB") application under the Social Security Act was denied after a hearing before an Administrative Law Judge ("ALJ"). This action is for judicial review of the Commissioner's final decision per 42 U.S.C. § 405(g). Each party filed a dispositive motion [Docs. 15 & 21] with a supporting memorandum [Docs. 16 & 22].

**I.  APPLICABLE LAW – STANDARD OF REVIEW**

A review of the Commissioner's findings is narrow.  The Court is confined to determining (1) whether substantial evidence supported the factual findings of the ALJ and (2) whether the Commissioner conformed to the relevant legal standards.  42 U.S.C. § 405(g); *see Brainard v. Sec'y of Health & Human Servs.,* 889 F.2d 679, 681 (6th Cir. 1989). "Substantial evidence" is evidence that is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support the challenged conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn is one of fact. *LeMaster v. Sec'y of Health & Human Servs.,* 802 F.2d 839, 841 (6th Cir. 1986).  A Court may not try the case *de novo*, resolve conflicts in the

evidence, or decide questions of credibility. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Even if the Court were to resolve factual issues differently, the Commissioner's decision must stand if substantial evidence supports it. *Listenbee v. Sec'y of Health & Human Services,* 846 F.2d 345, 349 (6th Cir. 1988). But, a decision supported by substantial evidence "will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 746 (6th Cir. 2007).

A claimant must be under a "disability" as defined by the Act to be eligible for benefits. "Disability" includes physical and mental impairments that are "medically determinable" and so severe as to prevent the claimant from (1) performing her past job and (2) engaging in "substantial gainful activity" available in the regional or national economies. 42 U.S.C. § 423(a).

A five-step sequential evaluation is used in disability determinations. 20 C.F.R. § 404.1520. Review ends with a dispositive finding at any step. *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The complete review poses five questions:

1. Has the claimant engaged in substantial gainful activity?

2. Does the claimant suffer from one or more severe impairments?

3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments (the "Listings"), 20 C.F.R. Subpart P, Appendix 1?

4. Considering the claimant's [Residual Functional Capacity], can he or she perform his or her past relevant work?

5. Assuming the claimant can no longer perform his or her past relevant work — and also considering the claimant's age, education, past work experience, and RFC — do significant numbers of other jobs exist in the national economy which the claimant can perform?

20 C.F.R. § 404.1520.

The claimant has the burden to establish an entitlement to benefits by proving the existence

of a disability under 42 U.S.C. § 423(d)(1)(A). *See Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994). The Commissioner has the burden to establish the claimant's ability to work at step five. *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990). The Court may consider any record evidence regardless of whether it was cited by the ALJ. *See Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).

## II. PROCEDURAL AND FACTUAL OVERVIEW

Jonathan Levan Howland ("Howland") applied for DIB benefits in June 2017 (Doc. 9, Transcript p. 15) (reference to "Tr" and the page denote the administrative record). Howland alleged disability based upon physical and mental conditions with an onset date of September 10, 2011 (*Id.*). An ALJ conducted a hearing on March 9, 2018, during which Howland and a vocational expert ("VE") testified (Tr. 37). The ALJ rendered a decision on March 26, 2018 (Tr. 15-30).

The ALJ found Howland, whom he categorized as a younger individual with at least a high school education and the ability to communicate in English on the date last insured, December 31, 2014, and had not engaged in substantial gainful activity since September 2011 (Tr. 17, 29). Although the State agency reviewers found no severe conditions, the ALJ disagreed and found Howland has the severe impairments of ankylosing spondylitis, anemia, unspecified depressive disorder with anxiety, and polysubstance abuse (in remission) (Tr. 17, 74-75, 88-89). Howland also claimed he suffered from a hiatal hernia and right elbow fracture (Tr. 18). The ALJ did not find the hernia severe; it only caused a mild, episodic functional limitation. The elbow fracture occurred after the expiration of the insured period and there was no evidence of elbow injury prior to insured status expiration. The ALJ also noted the medical record did not support elbow impairment or limitations (*Id.*). The ALJ concluded Howland does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (*Id.*).

The ALJ next formulated Howland's residual functional capacity ("RFC"). He found Howland retained the RFC to perform sedentary work as defined in 20 C.F.R. § 404.1567(a) (Tr. 20). However, he could never crawl or climb ladders, ropes, or scaffolds. He could occasionally climb ramps and stairs, balance, stoop, kneel, and crouch. He was also limited to occasional interaction with the public, supervisors and coworkers. In establishing this RFC, the ALJ relied upon the medical history and the reports of State agency psychological reviewers, Robert Paul, Ph.D. and Fawz Schoup, Ph.D. (Tr. 75-79, 90-94). Although he reviewed the VA record, the ALJ did not rely upon evaluations prepared for Howland's VA disability rating, such as the medical and mental evaluations from Drs. Judson McGowan and Christina Sparks, or assign weight to the evaluations to the extent the evaluations qualify as medical opinions under 20 C.F.R. § 404.1513.

On August 19, 2014, Dr. Judson McGowan conducted a compensation and pension exam ("C & P exam") of Howland for a VA disability benefits claim (Tr. 597). Dr. McGowan diagnosed ankylosing spondylitis and intervertebral disc syndrome in Howland's thoracic and lumbar spine (Tr. 601). He conducted range of motion measurements and found that Howland has functional impairment in his back and that repetitive use causes, among other things, lessened movement, weakness, fatigue, and instability (Tr. 612-13). He found tenderness and pain upon palpation of Howland's back and felt that guarding, but not muscle spasms, caused an abnormal gait or spine curvature. Howland showed no muscle atrophy and his muscle strength was rated 4 out of 5 in all categories (Tr. 614). He showed limits in his reflexes, but his sensation and straight leg raise were normal (Tr. 614-15). While the tests did not reveal radiculopathy pain during the exam, Dr. McGowan felt Howland had moderately severe radiculopathy.

Dr. McGowan concluded his report by addressing the functional impact of Howland's conditions. Because Howland was not experiencing a "flare-up" in symptoms at the time of the exam, Dr. McGowan felt he could not fully assess Howland's range of motion and functional

limitations. As a result, he simply listed Howland's subjective responses to questions about the impact of daily "flare-ups" (Tr. 620). Howland alleged he must change positions every 5 to 10 minutes and can only sit or drive for 10 to 15 minutes, stand 15 to 20 minutes, and walk 50 to 80 feet (Tr. 609, 619-20). He also alleged an inability to squat, kneel, repetitively bend his spine, climb or use foot controls and that he "avoids" reaching, overhead work, pushing and pulling, stairs and inclines (*Id.*).

On August 4, 2017, Dr. Robert Paul, a State agency reviewer, prepared a mental evaluation and RFC recommendation (Tr. 74-79). Dr. Paul found that Howland suffers from depressive, bipolar and related disorders (Tr. 75). He found no limitations in understanding and memory, concentration and persistence or adaptation (Tr. 78). He found moderate limitations in social interactions, including limitations in the ability to interact appropriately with the general public, accept instructions and respond appropriately to criticism from supervisors, and get along with co-workers or peers without distracting them or exhibiting behavioral extremes (Tr. 78-79). Dr. Paul specified that Howland can understand and remember simple and detailed tasks and instructions and sustain adequate persistence in such tasks across the work day and week (Tr. 79). For social interactions, he concluded Howland can adequately get along with the public, co-workers and supervisors in order to complete tasks but is better suited to working with things rather than people (*Id.*). He should have only brief, task-focused interactions with supervisors and co-workers and only occasional contact with the general public. Lastly, Dr. Paul opined that Howland can adapt and respond to work setting changes with reasonable support, make work-related plans and set goals independently (*Id.*).

State agency reviewer Dr. Fawz Schoup prepared an opinion for reconsideration on November 2, 2017 (Tr. 89-94). Like Dr. Paul, she found Howland suffers from depressive, bipolar and related disorders. She also determined that he has a substance addiction disorder related to

drug use. Dr. Schoup concurred with Dr. Paul's RFC recommendations.

In reaching the RFC, the ALJ assigned significant weight to the State agency reviewer reports based upon his conclusion that their recommendations were consistent with the record evidence (Tr. 27). As noted, the ALJ did not assign weight to Drs. McGowan or Sparks (*Id*.).

Based upon the RFC and a review of the Dictionary of Occupational Titles classifications, the ALJ found Howland could not perform his past relevant work (Tr. 28). However, the ALJ found he could adjust to other work that existed in the national economy in significant numbers from onset to the date lasted insured based upon VE testimony (Tr. 30). The ALJ concluded Howland was not disabled (*Id*.). The Appeals Council denied his 2018 review request (Tr. 1).

## IV.   ANALYSIS

### A.   Whether the ALJ properly evaluated Dr. McGowan's medical opinion.

Howland argues the ALJ did not give proper weight to the opinion of Dr. Judson McGowan, who evaluated Howland to determine his entitlement to VA disability benefits. Howland argues that while Dr. McGowan may not have "treated" Howland for his various medical conditions, because Dr. McGowan worked for the VA, his opinion should receive the same consideration as one from a "treating source" because the VA is the treating source.[1]  Knowing that the ALJ need not analyze rating decisions of other governmental agencies, he argues "[t]he report of McGowan was for the purpose of assisting in a VA rating decision, but that does not mean it was a rating decision…." [Doc. 16, pg. 13]. He argues McGowan's opinion was entitled to more consideration than the ALJ gave to it.

As conceded by Howland, the regulations provide that decisions by other governmental

---

[1]   Howland claims that "[t]he reason for the exam was for VA Disability benefits, but McGowan's report was a medical opinion from the Plaintiff's treating source, the VA." [Doc. 16, pg. 11].

agencies such as the Department of Veterans Affairs regarding whether a claimant is disabled are not binding on the Commissioner. 20 C.F.R. § 404.1504("[their decision] is not binding on us and is not our decision about whether you are disabled … under our rules"). But the regulation requires that the Commissioner "consider all of the supporting evidence underlying the other governmental agency['s] … decision that we receive as evidence in your claim in accordance with § 404.1513(a)(1) through (4)." *Id.*

Howland argues that the ALJ should have considered Dr. McGowan as a "treating source" not because Dr. McGowan treated Howland but because Dr. McGowan worked for the Veterans Administration where other physicians treated Howland. But just because a physician works at a hospital where a claimant receives treatment does not make that physician a "treating source." Treating sources are people, not buildings or governmental agencies. What distinguishes a treating source from, for example, an examining source, is not their employer, but what they did for the patient. Each could work for the same entity but provide opinions that an ALJ would weigh differently based on their relationship with the claimant. It is not surprising that Howland cited to no authority that supports his distinction. And, the Court has found none that support it either. This argument is without merit.

The more serious argument Howland raises is whether the ALJ's lack of any consideration of the opinion of Dr. McGowan warrants a remand. As March 27, 2017, while the ALJ need not analyze another governmental agency's decision about whether a claimant is disabled, the ALJ must consider the "supporting evidence" regarding that agency's decision "in accordance with § 404.1513(a)(1) through (4)." 20 C.F.R. § 404.1504. Dr. McGowan's opinion is just such supporting evidence contemplated under the regulations.

To be sure, the ALJ was aware of the VA disability rating and even referred to it in his

opinion. (Tr. 28).² While the ALJ noted that if he "receives evidence used by the [VA] supporting their decision," he will consider it. But in this case, what is noticeably absent is his consideration of Dr. McGowan's opinion. No reference to it at all.

The issue is whether the ALJ could ignore Dr. McGowan's opinion under the regulations. The regulations require the ALJ to consider supporting evidence but only "in accordance with § 404.1513(a)(1)-(4)." 20 C.F.R. § 404.1504. If Dr. McGowan's opinion does not fit within that regulation's provisions, then the ALJ was under no obligation to consider Dr. McGowan's opinion any more than he did, which was none. Otherwise, he should have at a minimum considered the opinion.

The Commissioner argues that the ALJ need not discuss all the evidence in the record, as long as his factual findings as a whole show that he implicitly considered the record as a whole. [Doc. 22, pg. 16] (citing *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 730 (6th Cir. 2013)). The Commissioner argues that the ALJ considered the "underlying evidence in his decision" because the ALJ cited to other physical examinations that were a part of the VA disability evaluation. That the ALJ cited to other physicians who participated in the VA's evaluation process but failed to mention Dr. McGowan's opinion only fortifies the Court's conclusion that the ALJ did not review his decision.

The Commissioner then argues that even if the ALJ failed to review the report, the ALJ was under no obligation to do so. She points to the fact that for part of the report, Dr. McGowan only

---

² The ALJ acknowledged that "the evidentiary record contains opinions and determinations made by the Department of Veterans Affairs….The regulations state that … the Administration will not provide an analysis about another agency or entity's determination regarding whether one is disabled … or entitled to benefits. It is important to note, however, that if the undersigned receives evidence used by the other governmental agency … supporting … their decision, it will be considered pursuant to 29 CFR 404.1513 and 416.913." (Tr. 28).

reported what Howland told him about his functional limitations during a "flare-up" of his back condition. She claims that this is not an opinion of Dr. McGowan but a "subjective report" of Howland. [Doc. 22, pg. 18]. The Commissioner correctly argues that "[a] doctor cannot simply report what his patient says and re-package it as an opinion." [Doc. 22, pg. 18] citing *Kepke v. Comm'r of Soc. Sec.*, 636 F.App'x 625, 629 (6th Cir. 2016).

If all Dr. McGowan did was repeat what Howland told him, the Court would agree that the ALJ would not need to give such statements any consideration. However, that is not the only thing Dr. McGowan did. He performed an in-person physical examination. He diagnosed his thoracic and lumbar spine as having Ankylosing Spondylitis and Intervertebral Disc Syndrome (Tr. 601). He based his opinion on his history and physical examination, his expertise as an Orthopedic surgeon, current imaging studies, current medical diagnosis, and relevant published literature (Tr. 601). Dr. McGowan noted that the disability was "secondary to the development and progression ankylosing of the thoraco [sic] lumbar spine secondary to his medical diagnosis of ankylosing spondylitis." (Tr. 602). Dr. McGowan also performed range of motion measurements in support of his opinion. In many aspects of his evaluation, Howland performed significantly below normal endpoints. For example, forward flexion ended at 25 where the normal endpoint was 90 (Tr. 610). Extension ended at 10, normal is 30. Right lateral flexion ends at 5, normal is 30. Left lateral flexion ends at 15, normal is 30. The only normal results in this range of motion evaluation was Howland's left lateral rotation. (Tr. 611). Dr. McGowan then noted that Howland's limitations were caused by "less movement than normal, weakened movement, excess fatigability, incoordination, pain on movement, swelling, deformity, instability of station, disturbance of locomotion, interference with sitting, standing and/or weight bearing, lack of endurance, and associated SI joint pelvic pain." (Tr. 612-13). He also noted severe pain in the right lower extremity, nerve roots involved in L4/L5/S1/S2/S3 on the right side that was of moderate severity.

Dr. McGowan conducted a significant medical evaluation that supported the VA's disability determination that the ALJ did not discuss at all. This warrants remand. *See Golden v. Comm'r*, No. 3:14-CV-492, 2015 WL 8917876 (E.D. Tenn. Nov. 23, 2015) (remanding case for consideration of examining VA psychiatrist's opinion that formed the underlying basis for VA's increasing disability rating due to PTSD from 70 to 100 percent); *Hicks v. Comm'r*, No. 1:15-cv-110, 2016 WL 490049, at *7 (S.D. Ohio Jan. 6, 2016) (holding that, although a VA disability rating is not binding, this does not provide an ALJ "carte blanche" to reject "the objective evidence cited in the [VA] Disability Decision").

It is true that an ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered." *Dykes ex rel. Brymer v. Barnhart*, 112 F. App'x 463, 467 (6th Cir. 2004). In *Brymer,* the Sixth Circuit found the failure to discuss the opinion of a consultative examiner was harmless error. But the Court noted that the ALJ "did not ignore [the doctor's] opinion as he had referenced it in his decision. He simply did not provide a detailed discussion of it. Moreover, the Court noted the evidence in that case included "opinions from other treating physicians and doctors performing residual functional capacity assessments that support the ALJ's conclusion and contradict the opinion of [the doctor]." *Id.* at 468. But in this case, the ALJ ignored Dr. McGowan's opinion, and it is hard for the Court to conclude that the failure to consider it was harmless error. Under the regulations, it warrants consideration by the ALJ.

The Court expresses no opinion as to whether Howland is entitled to benefits. Indeed, the ALJ may very well consider Dr. McGowan's opinion in accordance with 20 C.F.R. § 404.1513(a)(1)-(4) and find it not deserving of any weight. But Howland is entitled to that consideration under the regulations. All other issues raised are not ripe for review as the ALJ's consideration of Dr. McGowan's opinion may or may not affect the formulation of Howland's RFC.

The Court recommends the District Court not consider them at this time.

## V. CONCLUSION

Accordingly, the Court RECOMMENDS this case be REMANDED pursuant to sentence four of § 405(g) due to the ALJ's failure to consider the supporting evidence for the VA's disability rating as outlined in this Report. Based upon the foregoing, the Court finds that substantial evidence does not support the ALJ's decision. The Court RECOMMENDS that Plaintiff's motion for judgment on the pleadings [Doc. 15] be GRANTED and the Commissioner's motion for summary judgment [Doc. 21] be DENIED for the reasons stated herein.[3]

Respectfully Submitted,

s/ Clifton L. Corker
UNITED STATES MAGISTRATE JUDGE

---

[3]Objections to this Report and Recommendation must be filed within 14 days after service of this recommended disposition on the objecting party. 28 U.S.C. 636(b)(1); Fed. R. Civ. P. 72(b)(2). Such objections must conform to the requirements of Fed. R. Civ. P. 72(b). Failure to file objections within the time specified waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive or general. *Mira v. Marshall*, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370 (6th Cir. 1987).